IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MOLLIE PIRON, STEPHANIE MERINO and
BOUNSOU THAMVANTHONGKHAM on
behalf of themselves and all
others similarly situated,

    Plaintiffs,

v.                                          Civil Action No. 3:19cv709

GENERAL DYNAMIC'S INFORMATION
TECHNOLOGY, INC.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT (ECF No. 20) ("Motion to Dismiss"). The Court has reviewed the Amended Complaint, the Motion to Transfer, the supporting, opposing, and reply memoranda, and has considered the oral arguments of counsel. For the reasons set forth below, the Motion to Dismiss will be granted. The dismissal will be without prejudice and the Plaintiffs will be granted leave to file a Second Amended Complaint.

## BACKGROUND

In this putative class action, the Plaintiffs, Mollie Piron, Stephanie Merino, and Bounsou Thamvanthongkham ("Plaintiffs") seek back pay and employee benefits for alleged violations of the Worker

Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act"). ECF No. 5 at ¶¶ 1, 10-13. The Plaintiffs, and approximately 1,500 employees who are allegedly similarly situated to them, are former employees of Defendant General Dynamics Information Technology ("GDIT"). Id. at ¶ 1. The facts alleged in the Amended Complaint are not complicated. As required by well-settled principles, the alleged facts are to be taken as true for purposes of deciding this motion.

GDIT is an information technology company incorporated and headquartered in Virginia. ECF No. 5 at ¶ 13. In the Spring of 2018, GDIT acquired CSRA, a company that performed federal agency employee background checks for the Office of Personnel Management ("OPM"). Id. at ¶ 1. The CSRA/OPM contract was an asset to which GDIT succeeded when it acquired CSRA. Id. The CSRA employees, which included about 1,200 Investigators and 300 Reviewers, became employees of GDIT, and they continued to work on the OPM contract within GDIT as part of GDIT's Civil and Homeland Security Group. Id. According to the Amended Complaint, these employees all worked "remotely" from their homes but reported to, and received assignments from, managers Rebecca Knock and Anthony Durante, both of whom were situated in GDIT's Falls Church, Virginia office. Id.

In the Spring of 2019, GDIT determined that OPM work would soon end, and the company began to lay off employees in the Civil

2

and Homeland Security Group. Id. at ¶ 2. The first large wave of laid off employees were sent layoff letters on June 19, 2019, stating that their employment would be terminated on July 3, 2019. Id. at ¶ 4. Subsequent waves of layoffs occurred on July 26, 2019 and August 16, 2019, and a final wave of termination letters were sent on August 22, 2019 and 26, 2019 with termination dates set for September 5 or 13, 2019. Id. at ¶¶ 4-5.

The Amended Complaint alleges that, in taking those actions, GDIT violated the WARN Act by failing to provide sixty days' advance written notice of terminations to employees within the Civil and Homeland Security Group who worked "remotely" from home but who reported to, and received instructions from, GDIT's Falls Church office. Id. at ¶ 6.

## DISCUSSION

### I. LEGAL FRAMEWORK FOR A MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

GDIT moved for dismissal of the Amended Complaint because it fails to state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). When considering motions to dismiss under Rule 12(b)(6), courts "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018). To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth

3

"sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is plausible on its face, if a plaintiff can demonstrate more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted). However, courts do not "accept as true a legal conclusion couched as a factual allegation." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015) (quoting United States v. Triple Canopy, Inc., 775 F.3d 628, 632 n.1 (4th Cir. 2015) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

It also is a "basic pleading requirement" that a plaintiff must "set forth facts sufficient to allege each element of his claim." Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002) (internal citations omitted); Estate Constr. Co. v. Employing Plasters Ass'n, 14 F.3d 213, 220 (4th Cir. 1994) ("[W]e must determine whether allegations covering all the elements that comprise the theory for relief have been stated as required." (internal quotations omitted)). Moreover, each element of the allegation must be stated in terms that are neither vague nor conclusory. Estate Constr. Co., 14 F.3d at 220-22. And, allegations addressed to the elements of the claim must meet the

requirements of Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). In the context of the WARN Act, courts have dismissed WARN Act claims for failure to plausibly allege critical statutory requirements. See, e.g., Spain v. Va. Commonwealth Univ., No. 3:09cv266, 2009 WL 2461662, at *5 (E.D. Va. Aug. 11, 2009) (finding that the WARN Act claim failed as a matter of law because the pleading showed that the defendant did not qualify as an "employer" under the Act).

## II. ANALYSIS

The WARN Act requires sixty days of advance notice for what the statute refers to as a "mass layoff." 29 U.S.C. § 2101(a)(3)(B). The term "mass layoff" is defined to include "a reduction in force which . . . results in an employment loss at a single site of employment during any 30-day period for . . . at least 50 employees." 29 U.S.C. § 2101(3)(B)(i)(II) (emphasis added).[1]

The WARN Act does not define the term "single site of employment." However, the United States Department of Labor, the agency responsible for administering the statute, has defined a

---

[1] Part-time employees are excluded from the 50 employee loss threshold. 29 U.S.C. § 2101(b)(1). The statute also applies to the so-called "plant closings" which are not at issue here. Id. § 2101(a)(3)(A).

"single site of employment" to be "either a single location or a group of contiguous locations." 20 C.F.R. § 639.3(g)(i)(1).

The issue here is whether the Amended Complaint adequately alleges that the Plaintiffs and the putative class were employed at a single site of employment. To address that question, it is necessary to determine what the Amended Complaint actually says on that point.

To begin, it is alleged that all three Plaintiffs "worked remotely" until their employment was terminated. Am. Compl. ¶¶ 10-13 (ECF No. 5). It is then alleged that the "Plaintiffs and all similarly situated employees . . . worked at [GDIT's headquarters at 3170 Fairview Park Drive, Falls Church, Virginia]." Id. at ¶¶ 13, 14. The Plaintiffs contend that these allegations, taken together, are sufficient to state that they (and members of the putative class) were employed at a single site of employment within the meaning of 29 U.S.C. § 2101(3)(B)(i)(II) and 20 C.F.R. § 639.3(i). ECF No. 24 at 2-12. That being so, and considering that there is no other alleged defect in the Amended Complaint, the Plaintiffs argue that they adequately state a claim for violation of the WARN Act. Id.

Relying principally on Meson v. GTX Techs. Servs. Corp., 507 F.3d 803 (4th Cir. 2007), GDIT argues that the pleadings are

inadequate as a matter of law.[2] ECF No. 21 at 7-12. Specifically, GDIT argues that the Amended Complaint does not adequately allege that the terminations at issue affected at least fifty employees at any "single site of employment" as required to trigger the WARN Act. ECF No. 21 at 2.

As outlined above, Congress did not define "a single site of employment" in the WARN Act. Nor do the DOL regulations afford much help because they rather tersely define the term "single site of employment" ("[E]ither a single location or . . . group of contiguous locations").[3]

However, the DOL regulations do provide some guidance about the single site of employment for people who work in non-traditional settings. 20 C.F.R. § 639.3(i)(6) ("Subpart Six"). It is on Subpart Six that the Plaintiffs base their contention that they are employed at a single site of employment: GDIT's Falls Church office. Subpart Six provides that:

> <u>For workers</u> whose primary duties require travel from point to point, who are outstationed, or <u>whose primary duties involve work outside any of the employer's regular employment sites</u> (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are <u>assigned</u> as their <u>home base, from which</u> their <u>work is assigned,</u> or <u>to which</u> they <u>report</u> will be the <u>single</u>

---

[2] GDIT also cites <u>In Re: Storehouse, Inc.</u>, which applies <u>Meson</u> to facts not unlike those on which the Plaintiffs rely. <u>See</u> 2010 WL 4453849, at *1 (E.D. Va. 2010). The complaint there was considerably more detailed than the Amended Complaint. <u>Id.</u>
[3] 20 C.F.R. § 639.3(i) (emphasis added).

> site in which they are covered <u>for WARN purposes</u>.

20 C.F.R. § 639.3(i)(6) (emphasis added). The Plaintiffs argue that the Amended Complaint sufficiently alleges facts to bring them within the reach of Subpart Six.

In <u>Meson</u>, the Fourth Circuit confronted a fact pattern that was somewhat similar to that presented by the rather scant allegations of the Amended Complaint. 507 F.3d 803, 804-06 (4th Cir. 2007). In <u>Meson</u>, the plaintiff was a sales representative and regional manager who worked in a small office in Falls Church, Virginia but whose duties required significant travel. <u>Id.</u> at 804. In her role as regional manager, the plaintiff reported to the corporate headquarters in Florida. <u>Id.</u> For the plaintiff to have a valid WARN Act claim, she needed to show that she was employed at a site with over 50 full-time employees who were dismissed. <u>Id.</u> However, the Falls Church office for which she worked had fewer than fifty employees in total. <u>Id.</u> The plaintiff argued that, based on the language of Subpart Six, she could be considered as employed at the Florida corporate headquarters for purposes of the WARN Act rather than at the company's smaller office in Falls Church, Virginia. <u>Id.</u> at 809.

The Fourth Circuit rejected this contention, concluding that Subpart Six was meant to apply only to "mobile workers." <u>Id.</u>

Because the plaintiff was not a mobile worker, but had a fixed site of employment at the defendant's Falls Church office (at which she managed two employees), the Fourth Circuit held that Subpart Six did not apply to the plaintiff and that, for WARN Act purposes, the plaintiff's "single site of employment" was the defendant's Falls Church office. Id. In so doing, the Court of Appeals explained:

> Although subpart (6) could be read literally to cover almost any employee who leaves her office, we believe it was <u>intended to apply only to truly mobile workers without a regular, fixed place of work</u>. A close scrutiny of the provision's language supports this conclusion. The terms 'travel . . . from point to point,' 'outstationed,' and 'home base,' all connote the absence of a fixed workplace . . . The examples provided in subpart (6) also support this view. Bus drivers and railroad workers have no fixed workplace or office. Indeed, their jobs are characterized by travel and mobility. Although the provision includes 'salespersons' as examples, the context suggests that this reference is to traveling salespersons who work primarily out of their homes or cars, rather than those who work out of fixed offices.

Id. at 809. The application of Meson to the Amended Complaint necessitates the conclusions that Subpart Six does not save the Amended Complaint because the Amended Complaint does not allege facts from which it plausibly could be held that the Plaintiffs fit within the "mobile worker" interpretation given to Subpart Six by the Fourth Circuit in Meson. See id. Indeed, the only part of

9

the Amended Complaint on which the Plaintiffs rely to bring them within the reach of Subpart Six is that the Plaintiffs "worked remotely." ECF No. 5 at ¶ 10. That simply does not comport with the Fourth Circuit's decision in Meson. Therefore, the Amended Complaint fails to adequately or plausibly allege an element of the asserted WARN Act claim: the single site of employment element.

The Plaintiffs seek to escape the effect of Meson by arguing that the United States Court of Appeals for the Ninth Circuit has held otherwise in Bader v. N. Line Layers, Inc., 503 F.3d 813 (9th Cir. 2007). ECF No. 24 at 11-12. But it is Meson, not Bader, that controls here. Nor is it correct, as the Plaintiffs argue, that the factual differences between Meson and the allegations of the Amended Complaint foreclose the application of Meson. Id.

The Plaintiffs also argue that Meson does not control here because, in Meson, the Court of Appeals did not interpret the part of Subpart Six which provides that the WARN Act applies to workers "whose primary duties involve work outside any of the employer's regular employment sites." And, it is on that part of Subpart Six that the Plaintiffs rely. ECF No. 24 at 5-6 (citing 20 C.F.R. § 639.3(i)(6)). But the Meson court, whether rightly or wrongly, was clear in interpreting the meaning of an employee's "single site of employment" under Subpart Six, stating that:

> Although subpart (6) could be read literally to cover almost any employee who leaves her office, we believe it was intended to apply only to truly mobile workers without a regular, sixed place of work.

Meson, 507 F.3d at 809.

Because the decision in Meson applies to the Plaintiffs' claim, whether Subpart Six includes the Plaintiffs depends on whether the Plaintiffs can be considered "mobile" within the meaning of Meson. However, the Amended Complaint simply does not contain factual allegations that plausibly state that the Plaintiffs meet the test of Meson.

Meson set the rule for this Circuit, and viable WARN Act complaints in this Circuit must meet Meson's standard. The mere conclusory allegations that Plaintiffs worked remotely or worked at a particular location do not meet that standard. Hence the Amended Complaint fails under Iqbal, Twombly, and Meson.

However, the Plaintiffs' briefs and the argument of their counsel disclose the possibility that there are facts that have not been pleaded that would permit the crafting of a complaint that would meet the requirements of Meson, Twombly, and Iqbal. If that is so, the Plaintiffs may file a Second Amended Complaint. However, counsel is reminded that a Second Amended Complaint also must satisfy the requirements of Fed. R. Civ. P. 11.

## CONCLUSION

For the foregoing reasons, DEFENDANT GENERAL DYNAMICS INFORMATION TECHNOLOGY, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT (ECF No. 20) will be granted; the Amended Complaint will be dismissed; and leave will be granted for the filing of a Second Amended Complaint.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 10, 2020