**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

MOLLIE PIRON, STEPHANIE MERINO,
BOUNSOU THAMVANTHONGKHAM, and
CHRISTINA BEECROFT on behalf of themselves
and all others similarly situated,

                Plaintiffs,

v.

GENERAL DYNAMICS INFORMATION
TECHNOLOGY, INC.,

                Defendant.

CASE NO. 3:19-cv-00709-REP

**PLAINTIFFS' MEMORANDUM
<u>IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND RELATED RELIEF</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………….iii

LIST OF EXHIBITS……………………………………………………………………………..vii

FACTS ....................................................................................................................... 1

  A.  The OPM Program ................................................................................... 1

  B.  The Proposed Class ................................................................................. 2

  C.  Primary Job Duties of the Proposed Class Members ................................. 2

      1.    Investigators.................................................................................... 4

      2.    Mentors ........................................................................................... 5

      3.    Field Supervisors ............................................................................ 6

      4.    Case Reviewers and Case Review Supervisors ................................ 7

  D.  The Project Management Office (PMO) ..................................................... 8

  E.  Policies and Evidence Concerning the Employees' Location of Work .......... 9

      1.    Policies Related to Location of Work............................................... 11

      2.    Evidence Related to Location of Work ............................................ 13

  F.  WARN Violation and Proposed Class Representatives ............................... 13

ARGUMENT ............................................................................................................... 14

  I.    WARN CLAIMS ARE ESPECIALLY APPROPRIATE FOR CLASS
      CERTIFICATION.............................................................................. 14

  II.   THE RULE 23 ANALYSIS ................................................................. 16

  III.  THE PROPOSED CLASS IS ASCERTAINABLE AND MEETS THE
      REQUIREMENTS OF RULE 23(a) ..................................................... 17

      A.  The Court May Form Subclasses if Necessary.......................... 17

      B.  The Proposed Class is Ascertainable........................................ 18

      C.  The Numerosity Requirement is Met ...................................... 18

      D.  The Commonality Requirement is Met ..................................... 19

      E.  The Typicality Requirement is Met........................................... 21

      F.  The Adequacy of Representation Requirement is Met.............. 22

  IV.  THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(b)(3)........... 23

      A.  Common Issues will Predominate the Litigation ....................... 23

      B.  Class Treatment is the Superior Method of Adjudicating the Employees' Claims.... 28

  V.  THE COURT SHOULD APPOINT PLAINTIFFS AS CLASS REPRESENTATIVES .. 29

  VI.  THE FORM AND MANNER OF SERVICE OF NOTICE ARE PROPER ..................... 29

CONCLUSION............................................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Adams v. Henderson*,
　197 F.R.D. 162 (D. Md. 2000)............................................................................. 19

*Alberts v. Nash Finch Company*,
　245 F.R.D. 399 (D. Minn. 2007) ........................................................................ 16

*Amchem Prod. v. Windsor*,
　521 U.S. 591 (1997)................................................................................... 23, 28

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
　568 U.S. 455 (2013)........................................................................................ 16

*Applegate v. Formed Fiber Techs.*,
　No. 2:10-CV-00473-GZS, 2012 WL 3065542 (D. Me. July 27, 2012)................... 15

*Bolin v. Sears, Roebuck & Co.*,
　231 F.3d 970 (5th Cir. 2000) ............................................................................ 17

*Casale v. Kelly*,
　257 F.R.D. 396 (S.D.N.Y. 2009) ....................................................................... 17

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*,
　375 F.2d 648 (4th Cir.1967) ............................................................................. 18

*Deiter v. Microsoft Corp.*,
　436 F.3d 461 (4th Cir. 2006) ............................................................................ 21

*Ealy v. Pinkerton Gov't Servs.*,
　514 Fed.Appx. 299 (4th Cir.2013)................................................................ 16, 23

*Eisen v. Carlisle & Jacquelin*,
　391 F.2d 555 (2d Cir. 1968)............................................................................. 22

*EQT Prod. Co. v. Adair*,
　764 F.3d 347 (4th Cir. 2014) ............................................................ 16, 17, 18, 19

*Finnan v. L.F. Rothschild & Co.*,
　726 F. Supp. 460 (S.D.N.Y. 1989) .................................................................... 18

*Gen. Tel. Co. of Sw. v. Falcon*,
　457 U.S. 147 (1982)................................................................................... 16, 21

*Gomez v. Am. Garment Finishers Corp.*,
200 F.R.D. 579 (W.D. Tex. 2000) ............................................................ 24

*Grimes v. Evergreen Recreational Vehicles*,
3:16-CV-472-JD, 2018 WL 1257237 (N.D. Ind. Mar. 12, 2018) ............................. 15

*Gunnells v. Healthplan Servs.*,
348 F.3d 417 (4th Cir.2003) ................................................... 22, 23, 29

*In re Domestic Air Transp. Antitrust Litigation*,
141 F.R.D. 534 (N.D. Ga. 1992) ............................................................ 30

*In re Electronic Data Systems, Corp.*,
226 F.R.D. 559 (E.D. Tex. 2005) ........................................................... 30

*In re Mounce*,
390 B.R. 233 (Bankr. W.D. Tex. 2008) ..................................................... 19

*In re TWL Corp.*,
712 F.3d 886 (5th Cir. 2013) .............................................................. 28

*J.D. v. Nagin*,
255 F.R.D. 406 (E.D. La. 2009) ........................................................... 21

*Jenkins v. Raymark Industries, Inc.*,
782 F.2d 468 (5th Cir. 1986) ............................................................. 21

*Lienhart v. Dryvit Sys.*,
255 F.3d 138 (4th Cir. 2001) ............................................................. 16

*May v. Blackhawk Mining*,
319 F.R.D. 233 (E.D. Ky. 2017) ........................................................... 15

*Meson v. GATX Tech. Servs. Corp.*,
507 F.3d 803 (4th Cir. 2007) ................................................... 24, 25, 26

*Messer v. Bristol Compressors Int'l*,
No. 1:18CV00040, 2019 WL 2550328 (W.D. Va. June 20, 2019) ............... 15, 17, 29

*Murphy v. LenderLive Network, Inc.*,
13-CV-03135-RBJ, 2014 WL 5396165 (D. Colo. Oct. 22, 2014) ........................... 15

*New Orleans Clerks and Checkers Union Local 1497 v. Ryan-Walsh, Inc.*,
1994 WL 72101 (E.D. La., Mar. 2, 1994) ................................................... 19

*Pennington v. Fluor Corp.*,
  327 F.R.D. 89 (D.S.C. 2018) ................................................................. 15

*Peoples v. Wendover Funding*,
  179 F.R.D. 492 (D.Md.1998)................................................................. 18

*Rangel v. Cardell Cabinetry*,
  13-CA-843, SA-13-CA-890, 2014 WL 12542900 (W.D. Tex. Jan. 22, 2014)................ 22, 24, 28

*Soutter v. Equifax Info. Servs.*,
  307 F.R.D. 183 (E.D. Va. 2015) .................................................... passim

*Stillmock v. Weis Markets*,
  385 F. App'x 267 (4th Cir. 2010).......................................................... 23

*Thorn v. Jefferson–Pilot Life Ins. Co.*,
  445 F.3d 311 (4th Cir.2006) ............................................................... 16

*Tyson Foods, v. Bouaphakeo*,
  577 U.S. 442 (2016)................................................................... 16, 19

*Engle et al v. American Ambulette & Ambulance Service*,
  Adv. Proc. No. 13-00215 SWH (Bankr. E.D.N.C.) .................................... 15

*Wal-Mart Stores v. Dukes*,
  564 U.S. 338 (2011)................................................................... 19, 20

*Ward v. Dixie Nat. Life Ins. Co.*,
  595 F.3d 164 (4th Cir.2010) .............................................................. 22

*White v. Imperial Adjustment Corp.*,
  No. 99–CV–3804, 2002 WL 1809084 (E.D.La. Aug. 6, 2002)............................ 29

*Young v. Fortis Plastics*,
  294 F.R.D. 128 (N.D. Ind. 2013) ......................................................... 15

**Statutes**

29 U.S.C. § 2102(a) ......................................................................... 14
29 U.S.C. § 2104(a)(5)...................................................................... 15

**Rules**

Fed R. Civ. P. 23 ..................................................................... passim
Fed. R. Civ. P. 23(a) ................................................................. passim

Fed. R. Civ. P. 23(a) and (b)(3) .................................................................... 16
Rule 23(b)(3) .............................................................................................. 23, 30
Rule 23(c) ........................................................................................................ 16
Fed. R. Civ. P. 23(c)(2)(B) ............................................................................ 29
Rule 23(c)(3) ................................................................................................... 30

## Regulations

20 C.F.R. § 639.3(i)(6) ....................................................................... 24, 25, 26, 27
20 C.F.R. § 639.3(i)(8) ........................................................................................ 27

## Other Authorities

Class Certification in the Age of Aggregate Proof,
   84 N.Y.U. L. Rev. 97 (2009) ......................................................................... 16
Newberg on Class Actions § 3:11 (5th ed.2013) ............................................ 18
Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012) .................... 19
Newberg on Class Actions § 7:33 (4th ed.) ................................................... 17

**LIST OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---|---|
| 1 | Rule 30(b)(6) Deposition of Frank Shartle |
| 2 | Deposition of Mollie Piron |
| 3 | Deposition of Stephanie Merino |
| 4 | Deposition of Bounsou Thamvanthongkham |
| 5 | Deposition of Christina Beecroft |
| 6 | Technical Proposal and Excerpt of Price Proposal |
| 7 | BI Performance Chart |
| 8 | OPM Group Terminations 2019 |
| 9 | OPM Group Terminations 2019 Sorted by Notice Date |
| 10 | Org Chart Review |
| 11 | Operations Position Descriptions |
| 12 | BI April Payout |
| 13 | Case Reviewer Report Card |
| 14 | Incentive Plan |
| 15 | Excerpts from Handbook |
| 16 | Merino Interrogatory Responses |
| 17 | Beecroft Interrogatory Responses |
| 18 | Thamvanthongkham Interrogatory Responses |
| 19 | Piron Interrogatory Responses |
| 20 | Summary of Plaintiffs' Interrogatory Responses 1, 3 and 4 |
| 21 | Check Ride Scoring Checklist |
| 22 | BICS PMO Falls Church Office Org |
| 23 | Roster with Pictures |
| 24 | New Employee Orientation |
| 25 | Flexible Work Location Policy |
| 26 | PII Policy |
| 27 | PII Acknowledgement and Domicile Storage Requirements |
| 28 | Excerpt from Labor Hours Report |
| 29 | Beecroft Travel Expenses |
| 30 | Merino Travel Expenses |
| 31 | Excerpt from Justification Form |
| 32 | Piron Declaration |
| 33 | Beecroft Declaration |
| 34 | Merino Declaration |
| 35 | Thamvanthongkham Declaration |
| 36 | Roupinian Declaration |
| 37 | Proposed Notice of Class Action |
| 38 | Durante Weekly Update |
| 39 | FAQ |
| 40 | Orders from *Kennedy* and *Engle* |

Plaintiffs Mollie Piron, Stephanie Merino, Bounsou Thamvanthongkham, and Christina Beecroft ("Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this Memorandum in Support of Motion for Class Certification and Related Relief.

## FACTS

### A. The OPM Program

Defendant General Dynamics Information Technology, Inc., ("GDIT" or "Defendant")[1] sought to win a background check contract from the United States Office of Personnel Management ("OPM"). ████████████████████████████████████████

████████████████████████████████████████(Technical Proposal and Excerpt of Price Proposal[2], attached as Ex. 6, at 31[3].) ████████████

████████████████████████████████████████

████████████████████████████████████████

(Shartle 30b6 Dep., 47:21-48:14, 62:18-63:8; Dep. of Mollie Piron, attached as Ex. 2, ("Piron Dep."), 61:11-15.) ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ (Shartle 30b6 Dep., 56:9-

---

[1] ████████████████████████████████████████
(Rule 30(b)(6) Dep. of Frank Shartle, attached as Ex. 1 ("Shartle 30b6 Dep."), 11:11-13.)
████████████████████████████████████████
(Shartle 30b6 Dep., 11:6-20, 13:14-21, 22:18-20.)
[2] ████████████████████████████████████████
████████████████ (Shartle 30b6 Dep., 49:20-50:17, 54:4-8, 55:16-56:3; Ex. 6.)
[3] Page citations to non-deposition exhibits refer to the ECF-assigned page number, e.g., "Page 31 of 144" here.  Citations to deposition transcripts refer to their internal pagination.

57:15, 58:18-59:6, 59:21-60:14; Ex. 6 at 24; Piron Dep., 47:17-24, 60:15-25, 115:19-116:3.)

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████ (Shartle

30b6 Dep., 74:19-76:7; BI Performance Chart, attached as Ex. 7, at 3; Ex. 6 at 144.)

### B.  The Proposed Class

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ (BICS PMO Falls Church

Office Org, attached as Ex. 22, at 2-3.)[4] █████████████████████

████████████████████████████████████████████████[5]

### C.  Primary Job Duties of the Proposed Class Members

███████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████ (Shartle 30b6 Dep., 144:20-145:19, 146:3-5, 149:15-150:2,

---

[4] ████████████████████████████████████████████████████████
██████████████████████████ (OPM Group Terminations 2019, attached
as Ex. 8, at 3-11; Shartle 30b6 Dep., 25:6-8, 27:2-4, 27:16-28:11, 31:17-24.). ████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████ (Shartle 30b6 Dep., 28:23-29:3, 29:20-30:2.)
[5] ████████████████████████████████████████████████████████████
████████████████████████████████████ (Ex. 8 at 3-11.)
██████████████████████████████ (Shartle 30b6 Dep., 33:23-34:8),
████████████████████ (Id., 32:11-33:4 (Investigators), 36:5-13 (Case Review
Supervisors), 36:14-37:2 (Case Reviewers). ████████████████████████
██████████████████████ (See, e.g., BI April Payout, attached as Ex. 12
██████ Case Reviewer Report Card, attached as Ex. 13, (
███ ); Ex. 10 at 13-73 (lists of both). ████████████ (Beecroft Dep., 25:9-26:9.)

151:15-21; Dep. of Stephanie Merino, attached as Ex. 3, ("Merino Dep."), 79:25-80:4; Org Chart

Review, attached as Ex. 10, at 9, 12, 59-60; Operations Position Descriptions, attached as Ex. 11,

at 9.)

█████████████████████████████████████████ (Shartle 30b6 Dep., 48:24-49:4).

████████████████████████████████████████████████████

███████████████████████████████████ (Ex. 6 at 62.) ████████████

██████████████████████████████████████ (Shartle 30b6 Dep., 170:9-11.) ██████

██████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████ (Shartle 30b6 Dep., 85:2-6;

86:24-87:4; 93:16-21.)[6] ████████████████████████████

███████████████████████████████████████ (Shartle 30b6 Dep., 91:4-

13, 92:8-93:8; Ex. 13 at 2.) ██████████████████████████████[7],

(Shartle 30b6 Dep., 169:18-:171:18), ████████████████████████████

██████████████████████████████████████████████

██████████████████████████████ (Shartle 30b6 Dep., 71:6-8, 79:9-81:5, 81:15-15,

82:17-24, 89:19-90:4; Ex. 7 at 3-5; Ex. 12 at 3; Ex. 13 at 2.) ███████████████████

████████████ (Shartle 30b6 Dep., 95:23-97:19; Incentive Plan, attached as Ex. 14, at 6-7.)[8]

---

[6] ████████████████████████████████ (Shartle 30b6 Dep., 170:17-19.)
[7] (See Durante Weekly Update, attached as Ex. 38, at 3 (███████████), 4 (███████████).)
[8] ████████████████████████████████████████████

1. Investigators

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████ (Shartle 30b6 Dep., 149:15-150:2; Ex. 11 at 9.)  The

OPM Investigator's Handbook required that interviews and record reviews be done in person

wherever possible.  (Excerpts from Handbook[10], attached as Ex. 15, at 8-9, 11; Shartle 30b6

Dep., 156:16-17; Ex. 6 at 23 (████████████████████████████

████).  ███████████████████████████████████████

█████████████████████████ (Thamvanthongkham Dep. at 179:20-180:19; Beecroft Dep.,

75:6-13.)[11] ████████████████████████████████████████████

████████████████████████████ (Shartle 30b6 Dep., 182:5-12. 185:19-186:1; Merino

Dep., 94:2-6.)[12]  Tasks that were not location-dependent, such as writing ROIs, calling sources

and witnesses to schedule appointments and administrative work, could be done anywhere.

(Merino Interrog. Resps., attached as Ex. 16, at 4-5; Merino Dep., 70:9-73:21;

---

[9] ███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ (Dep. of Bounsou Thamvanthongkham, attached as Ex. 4 ("Thamvanthongkham
Dep."), 32:12-23, 46:6-13; Merino Dep., 47:2-9, 48:12-19; Dep. of Christina Beecroft, attached
as Ex. 5 ("Beecroft Dep."), 26:10-14, 68:22-70:2.)
[10] The exhibit comprises portions of the Handbook produced (and redacted) by the Defense and
Counterintelligence Security Agency in response to Plaintiffs' subpoena.
[11] (See FAQ, attached as Ex. 39, at 4 ████████████████████████████████
████████████████████ ) ███████████████████████████████████ (Merino
Dep. 83:18-25.)
[12] ████████████████████████████████████████████████████
████████████████████████████
(Thamvanthongkham Dep. at 112:25-113:19; Merino Dep. 93:23-95:14, 104:11-105:3.)

Thamvanthongkham Dep. at 176:23-179:2; <u>Beecroft Interrog. Resps.</u>, attached as <u>Ex. 17</u>, at 4-5;

Beecroft Dep., 79:12-81:4.) ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ (Merino Dep.,

191:23-193:14, 194:16-195:2. *See also id.*, 153:24-154:14, 185:24-186:2 (████████████████████

████████████████████████ )

████████████████████████████████████████████████████

██████████████████████████████ (Merino Dep., 163:23-164:15.) ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ (*Id.*, 208:18-210:6.)[13]

2.  <u>Mentors</u>

████████████████████████████████ (<u>Ex. 11</u> at 19; Shartle 30b6 Dep., 151:15-21; <u>Ex. 10</u> at

9; Merino Dep., 79:25-80:4.) ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████ (Beecroft Dep., 77:22-78:19, 79:6-11, 97:5-98:7; Merino Dep.,

109:23-110:25; 200:15-201:4.)[15] ████████████████████████████████████

██████████████████████████████████ (Merino Dep., 80:21-81:4, 81:12-25, 83:10-14. *See,*

*e.g.*, <u>Check Ride Scoring Checklist</u>, attached as <u>Ex. 21</u>.) ████████████████████████

---

[13] ████████████████████████████████████████████████████████

████████████████████████ (Shartle 30b6 Dep., 162:17-24.)

[14] ████████████████████████████████████████████████████

████████████████████████████████████████ (<u>Ex. 6</u> at 74;

Beecroft Dep., 92:24-93:6, 106:7-23; Merino Dep., 80:21-81:4 92:10-18.)

[15] ████████████████████████████████████████████████████████

████████████████████████ (Merino Dep., 110:6-25; Beecroft Dep., 77:8-17.)

██████████████████████████████████████████████████

████   (Merino Dep., 82:5-20.)   ████████████████████████

██████████████████████████████████████████████

(Beecroft Dep., 76:7-77:7; Merino Dep., 153:24-154:14, 185:24-186:2.)   ████████████████

████████████████████████████████████████   (Merino Dep., 154:20-25;

Beecroft Dep., 83:13-18.)   ██████████████████████   (Merino Dep., 67:3-68:7.)

Both Plaintiff Beecroft and Plaintiff Merino were frequently required to travel for work

assignments, while other tasks could be performed anywhere and were done either at home or

outside the home.  (*See* Summary of Pls.' Interrog. Resps. (1, 3 and 4), attached as Ex. 20, at 2.)

██████████████████████████████████████████████   (Merino Dep.,

206:21-207:13.)   ██████████████████████████████████████

██████████████████████████   (Merino Dep., 183:11-19.)   ████████████████████

██████████████████████████   (Beecroft Dep., 53:11-13.)   ████████████████████

██████████████████████████████████   (Beecroft Dep., 29:21-30:11.)

3.  Field Supervisors

██████████████████████████████████████████████

██████████████████████████████████████████████

████   (Thamvanthongkham Dep. at 71:11-16, 72:3-16; Ex. 10 at 12.)   ████████████████

███████████████████████████████   (Thamvanthongkham Dep. at 59:19-

23.)[16]   ██████████████████████████████████████████████

_____

[16]   ████████████████████████████████████████████████

██████████   (Thamvanthongkham Dep. at 219:20-220:22, 226:15-24.)

████████████ (Thamvanthongkham Dep. at 74:10-18.) ████████████████

████████ (Thamvanthongkham Dep. at 65:10-15.)

Some of Plaintiff Thamvanthongkham's duties required travel, such as performing check rides, overseeing training and holding monthly in-person team meetings with his Investigators, while others could be performed anywhere and were done at either home or outside his home. (*See* Ex. 20 at 2; Thamvanthongkham Interrog. Resps., attached as Ex. 18, at 4-8; Thamvanthongkham Dep., 94:5-95:9, 98:8-99:9)  He spent time working outside his home anywhere from 2 to 5 days a week. (Ex. 20 at 2; Thamvanthongkham Dep. at 147:12-22, 2-4:11-18; 187:12-20.) ████████████████████████████████

████████ (Thamvanthongkham Dep. at 203:24-204:7.) ████████████████████

████████████████████████████ (Shartle 30b6 Dep., 163:10-14.)

> 4.   Case Reviewers and Case Review Supervisors

████████████████████████████████████ (Piron Dep. at 31:19-32:9.) ████████████████████████████████

████████ (Piron Dep. at 47:17-24, 115:19-116:3; Ex. 10 at 60; Shartle 30b6 Dep., 145:15-19.) ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ (Shartle 30b6 Dep., 57:4-10, 86:1-9; Piron Dep., 60:15-25; Ex. 6 at 35-36 ████████

████████████████████████████) ████████████████

████████████████████████████████████████

████████████ (Piron Dep. at 57:14-19, 71:19-72:20, 110:3-111:13) ████████████

██████████████████████████████████████████ (Piron Dep.,

34:12-14, 112:8-113:7)  Piron performed some tasks outside her home, ████████████

(Piron Dep. at 73:18-74:6, 94:18-95:4; <u>Piron Interrog. Resps.</u>, attached as <u>Ex. 19</u>, at 4; <u>Ex. 20</u> at

2.) ████████████████████ (Piron Dep. at 17:23-18:6.) ████████████████

█████████████████████████████████████████████████████████

███████████████████ (Piron Dep., 122:8-18; Shartle 30b6 Dep., 163:16-19.)

     Case Review Supervisors had the same job duties.  (<u>Ex. 10</u> at 59; Shartle 30b6 Dep.,

145:11-14.) ████████████████████████████████████████

███████████████ (Shartle 30b6 Dep., 163:20-23.)

### D.  The Project Management Office (PMO)

██████████████████████████████████████████

███████████████████████████████████████████████

████ (<u>Ex. 6</u> at 15.)[17] ████████████████████████████

██████████████████████████████████████ (<u>Ex. 11</u>  at 4.)

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████ (Shartle 30b6 Dep., 147:11-

149:10; <u>Ex. 11</u> at 4-13.) ████████████████████████

███████████████████████████████████████████

████████████████ (<u>Ex. 22</u> at 2-10.)



---

[17] ██████████████████████████████████████████████
████████████ (Thamvanthongkham Dep., 213:6-18, 222:4-7.)



(Shartle 30b6 Dep., 148:8-14.)

(Shartle 30b6 Dep., 60:14-61:24).

(Shartle 30b6 Dep., 182:13-183:7.)

(Thamvanthongkham Dep. at 49:2-15, 53:25-54:5.)

(Merino Dep., 58:5-19, 59:22-60:4.)

(Piron Dep. at 55:17-23; Ex. 10 at 60; Ex. 6 at 36 (cases in reviewer queue assigned priority value.)

(Thamvanthongkham Dep. at 49:24-50:11; Merino Dep., 48:20-49:13, 49:23-50:17; 61:12-62:5; 109:23-110:18; Beecroft Dep., 70:16-23, 72:18-25, 87:12-88:3, 181:5-20.)

(Merino Dep., 220:22-221:4; Beecroft Dep., 182:3-15.)

### E.  Policies and Evidence Concerning the Employees' Location of Work

(Ex. 6 at 31), Plaintiffs were issued the same equipment, including a laptop and VPN stick

---

18

.
(Roster with Pictures, attached as Ex. 23, at 2; Ex. 22 at 3.)

█████████████████[19] (Thamvanthongkham Dep. at 160:18-25; Ex. 18 at 5; Piron Dep. at 85:12-21;

Ex. 19 at 5; Merino Dep., 168:11-15, 173:19-174:13; Ex. 16, at 5[20]; Beecroft Dep., 207:19-

208:14; Ex. 17 at 5.)[21] ████████████████████████████████████████████

██████████ Beecroft Dep., 167:21-168:7; Thamvanthongkham Dep. at 139:19-140:11, 144:7-9,

145:2-5; Piron Dep. at 48:7-10, 58:11-14.) ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ (Ex. 6 at 11. *See id* at 25 ██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ (*See* Merino Dep., 147:22-25;

(Thamvanthongkham Dep. at 177:18-23; Beecroft Dep., 234:3-7; Piron Dep., 57:14-19, 71:19-

72:20, 89:9-14.

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████[22]████████████████████████████████████████

---

[19] All employees in the OPM program used the same programs for expense reporting, eLearning, email and instant messaging. ████████████████████████████████████████ had parallel sets of programs for accessing company systems, collaboration, access to internal GDIT policies, time reporting, and HR information.  (Shartle 30b6 Dep., 173:1-3, 174:12-176:6; New Employee Orientation, attached as Ex. 24, at 15.)

[20] ████████████████████████████████████████████████████████
████████████████ (Merino Dep., 168:16-22; Thamvanthongkham Dep., 162:16-19.)

[21] ███████████████████████████████████████████████████████
████████████████████ (Shartle 30b6 Dep., 178:2-21.)

[22] (*See* Merino Dep., 70:9-73:21, 187:21-188:11, 191:17-22 (Investigators); *Id.*, 177:21-178:19, 179:6-180:20, 181:3-11 (Mentors); Beecroft Dep., 222:13-223:9 (Investigators/Mentors); Thamvanthongkham Dep. at 176:23-179:1 (Investigators); *Id.*, 80:17-81:10, 81:18-82:9-14, 82:23-85:6, 85:7-17, 86:10-25, 88:7-17, 88:18-89:4, 90:10-19, 91:14-21, 92:19, 96:7-11, 101:7-21 (Field Supervisors); Piron Dep. at 34:12-14, 114:3-8 (Case Reviewers).

█████ (Merino Dep., 184:21-185:13) (Investigators and Mentors); Thamvanthongkham Dep. at

153:24-154:5 (Field Supervisors); Piron Dep., 105:6-23 (only told supervisor when she had

appointments and would not have case files with her to discuss them). ████████████

████████████████████████████████ (Shartle 30b6 Dep., 156:18-20.)

1. <u>Policies Related to Location of Work</u>

████████████████████████████████

████████████████ (Shartle 30b6 Dep., 101:15-23-102:9, 103:1-16,

<u>Flexible Work Location Policy</u>[23], attached as <u>Ex.</u> <u>25</u>, at 2.) ████████████

████████████████████████████████

████████████████████████████████ (<u>Ex.</u>

<u>8</u> at 3-11 (Column I); Shartle 30b6 Dep., 106:2-107:3; <u>Ex. 25</u> at 3.) ████████

████████████████████████████████

████████████████████████████████

████████ (Shartle 30b6 Dep., 104:15-105:13; <u>Ex. 25</u> at 3.) ████████

████████████████████ (Shartle 30b6 Dep.,

111:16-20; <u>Ex. 25</u> at 4.)[24] ████████████

████████████████ (Shartle 30b6 Dep., 122:22-123:1.)

████████████████████████████████

████████████████████████████████

████████████ (Shartle 30b6 Dep., 68:3-68:18.)

---

[23] ████████████████████████████████
████████ (Shartle 30b6 Dep., 99:18-101:13; <u>Ex. 25</u> at 2, 6.)
[24] ████████████████████████ (Shartle 30b6 Dep., 112:9-20.)



(Thamvanthongkham Dep. at 120:8-20; <u>PII Policy</u>, attached as <u>Ex. 26</u>; Piron Dep. at 45:3-9).

(<u>Ex. 26</u> at 6-8.)[25]

(<u>Ex. 26</u> at 7; Thamvanthongkham Dep. at 116:23-117:19; Merino Dep., 109:2-13.) PII Acknowledgement and Domicile Storage Requirements forms, attesting to the way they would implement the 2-barrier rule when their homes were unattended. (Shartle 30b6 Dep., 109:10-12. *See, e.g.*, Piron Dep. at 39:8-15; <u>PII Acknowledgement and Domicile Storage Requirements</u>, attached as <u>Ex. 27</u>.)

(<u>Ex. 26</u> at 11; Merino Dep., 143:4-19; Beecroft Dep., 115:21-117:9, 153:19-154:2; 160:5-12).[26]

---

[25] (*See* Thamvanthongkham Dep. at 133:2-133:9, 135:7-14; Merino Dep., 106:18-23 ( ); *Id.*, 180:6-13 ( ); Beecroft Dep., 118:21-119:14 ( ).

[26] (Beecroft Dep., 116:11-15.)



2. Evidence Related to Location of Work

(Shartle 30b6 Dep.,

114:14-22, 116:1-4, 116:21-24.)

(*See, e.g.*, Excerpt from Labor Hours Report[27], attached as Ex. 28, at 2.)

(Shartle 30b6 Dep., 156:21-157:2; 165:3-16; 168:16-169:2. *See, e.g.*,

Beecroft Travel Expenses, attached as Ex. 29[28]; Merino Travel Expenses, attached as Ex. 30.)

(Shartle 30b6 Dep., 165:3-16.)

(Shartle 30b6 Dep., 155:10-13; Ex. 26 at 11.)

(Shartle 30b6 Dep., 155:10-21.)

(Shartle 30b6 Dep., 159:4-160:10.)

(Shartle 30b6 Dep.,

156:10-17; 93:9-21; Ex. 15 at 8-9, 11.)

F. WARN Violation and Proposed Class Representatives

---

[27]

[28]                                                        Some columns are hidden to fit relevant columns on a single page.

 (OPM Group Terminations 2019, Sorted by Notice Date, attached as Ex. 9, at 2-12.) ████████████████████████████████████████

████████████████ (*Id*.) ████████████████████████████████████

██████████████████████████████████ (*See, e.g.*, Excerpt from Justification Form, attached as Ex. 31, at 2.)

Plaintiffs were terminated on July 3 (Piron and Thamvanthongkham), August 7 (Beecroft), and September 5 (Merino), and, ████████████████████████ (Ex. 9 at 2-5.)  All four have been in frequent communication with counsel throughout the case, reviewed pleadings, worked to prepare written discovery responses, and prepared and sat for deposition. (Piron Dep. at 14:13-17, 15:13-15; 19:8-20; Piron Declaration, attached as Ex. 32, ¶11; Beecroft Dep., 12:19-13:19; 17:21-19:8; 21:24-22:8, 171:23-172:8; Beecroft Declaration, attached as Ex. 33, ¶11; Merino Dep., 12:17-19, 13:22-14:6, 18:9-16, 150:15-20; Merino Declaration, attached as Ex. 34, ¶11; Thamvanthongkham Dep. at 234:16-21, 239:4, 242:23-243:7, 244:15-245:13, 248:7-249:4; Thamvanthongkham Declaration, attached as Ex. 35, ¶11.) With claims of less than $10,000, Plaintiffs cannot afford to pursue their claims as sole litigants and believe that other former employees cannot either.  (Ex. 32, ¶13; Ex. 33, ¶13; Ex. 34, ¶13; Ex. 35, ¶13.)

## ARGUMENT

## I. WARN CLAIMS ARE ESPECIALLY APPROPRIATE FOR CLASS CERTIFICATION

The WARN Act provides a rather simple mandate: before instituting a "plant closing" or "mass layoff," an employer must give sixty days' written notice to employees and relevant local government entities.  29 U.S.C. § 2102(a).  A covered employer is one that employs at least 100

full-time employees.  *Id.* § 2101(a)(1).  WARN provides a cause of action for employees who

suffer a covered employment loss without having received that notice.  *Id.* § 2104.

Congress underscored an employee's right to bring representative actions to enforce the

Act: "A person seeking to enforce such liability … may sue *either for such person or for other*

*persons similarly situated*, or both, in any district court[.]"  *Id.* § 2104(a)(5) (emphasis added).

*See Applegate v. Formed Fiber Techs.,* No. 2:10-CV-00473-GZS, 2012 WL 3065542, at *3 (D.

Me. July 27, 2012) ("The Act itself expressly emphasizes the appropriateness of class-based

proceedings to…obtain statutory relief.").  Courts thus "regularly h[o]ld that the WARN Act is

particularly amenable to class-based litigation."  *Id.* (quotations omitted) (collecting cases).

Courts routinely certify Rule 23 WARN class actions either by stipulation or on motion.

*See e.g.*, *Kennedy v. Colortree Group,* No. 3:19-cv-00424 (E.D. Va.) (ECF 24) (granting motion

to certify); *Engle et al v. American Ambulette & Ambulance Service,* Adv. Proc. No. 13-00215-8-

SWH (Bankr. E.D.N.C.) (ECF 93 ) (remote employees)[29]; *Messer v. Bristol Compressors Int'l*,

No. 1:18CV00040, 2019 WL 2550328, at *1 (W.D. Va. June 20, 2019) (granting class

certification); *Pennington v. Fluor Corp.*, 327 F.R.D. 89 (D.S.C. 2018), supplemented, 0:17-CV-

02094-JMC, 2019 WL 2537674 (D.S.C. June 20, 2019); *Grimes v. Evergreen Recreational*

*Vehicles,* 3:16-CV-472-JD, 2018 WL 1257237, at *1 (N.D. Ind. Mar. 12, 2018) (class

representative "typical" who worked remotely from home in North Carolina); *May v. Blackhawk*

*Mining*, 319 F.R.D. 233 (E.D. Ky. 2017); *Murphy v. LenderLive Network, Inc.*, 13-CV-03135-

RBJ, 2014 WL 5396165, at *2 (D. Colo. Oct. 22, 2014) (certifying class including remote

employees); *Young v. Fortis Plastics*, 294 F.R.D. 128 (N.D. Ind. 2013), *modified in part sub*

*nom. Lace v. Fortis Plastics*, 3:12-CV-363 JD, 2015 WL 1383806 (N.D. Ind. Mar. 24, 2015).

---

[29] The Orders from *Kennedy* and *Engle* are attached as Ex. 40, at 2, 5.

## II.  THE RULE 23 ANALYSIS

"Class relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class." *Soutter v. Equifax Info. Servs.*, 307 F.R.D. 183, 195 (E.D. Va. 2015) (quotations omitted) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982)).  Class actions under FED R. CIV. P. 23 save judicial and party resources by litigating common issues "in an economical fashion."  *Soutter*, 307 F.R.D. at 195 (quoting *Falcon*, 457 U.S. at 155).  Class certification is appropriate when "the numerosity, commonality, typicality, representativeness, predominance, and superiority requirements of both Rule 23(a) and (b)(3) are met."  *Lienhart v. Dryvit Sys.*, 255 F.3d 138, 146 (4th Cir. 2001).  Rule 23(c) also contains an implicit threshold "ascertainability" requirement.  *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).

Although the Rule 23 analysis is rigorous, *see Ealy v. Pinkerton Gov't Servs.*, 514 Fed.Appx. 299, 307–08 (4th Cir.2013), it is not without its limits.  "[T]he likelihood of the plaintiffs' success on the merits ... is not relevant to the issue of whether certification is proper."  *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir.2006).  Thus, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).[30]

---

[30] Because of Rule 23's focus on commonality of issues, rather than their ultimate outcome, any purported "fatal similarity [among class members]— [an alleged] failure of proof as to an element of the Plaintiffs' cause of action… should [be] engage[d]…as a matter of summary judgment, not class certification."  *Tyson Foods, v. Bouaphakeo*, 577 U.S. 442, 457 (2016) (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 107 (2009)).  If fatal similarities exist, Defendants "should favor certification…as [Defendants] 'win' [on the merits] would then bind all class members, instead of only the individual Plaintiffs." *Alberts v. Nash Finch Company*, 245 F.R.D. 399, 408 n.4 (D. Minn. 2007).

## III. THE PROPOSED CLASS IS ASCERTAINABLE AND MEETS THE REQUIREMENTS OF RULE 23(a)

The proposed Class definition is as follows:

The GDIT employees who worked on its OPM contract and were terminated between July and December 2019 and have not filed a timely request to opt-out of the class.

### A.  The Court May Form Subclasses if Necessary

As outlined supra (*Facts* Sec. E.1.), the Proposed Class[31] were remote employees whose primary job duties involved work outside the regular employment sites of GDIT and were governed by the same rules and policies, including those concerning where they performed their work.   To the extent the travel component of the class members' duties becomes relevant, Plaintiffs suggest the creation of an informal subclass that includes Investigators (including Mentors) and Field Supervisors, whose duties required significant travel (Supra Facts Secs. C.1-3).  The result is a main class to which all class members belong, and a subclass that includes those who were required to travel.  "Rule 23(c)(4) explicitly recognizes the flexibility that courts need in class certification by allowing certification 'with respect to particular issues' and division of the class into subclasses." *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000). *See EQT*, 764 F.3d at 369 ( "defendants' conduct can be assessed on a subclass basis"); *Messer v. Bristol Compressors Int'l*, No. 1:18CV00040, 2019 WL 2550328, at *1 (W.D. Va. June 20, 2019) (certifying WARN subclasses).[32]  Should the Court find it beneficial, Plaintiffs propose the following subclass:

---

[31] The Proposed Class includes ███████████████████████████████ ██████████ (Ex. 22 at 2.)  Plaintiffs' argument for certification focuses on the 94% of the class who worked remotely.

[32] Subclasses need not be formal.  They can be created as "case-management subclasses," which are convenience subclasses made for particular litigation purposes. *Casale v. Kelly*, 257 F.R.D. 396, 408-09, 415 (S.D.N.Y. 2009) citing Newberg § 7:33 (4th ed.). Case-management subclasses can expedite resolution of the case by segregating a distinct legal issue that is common to some

<u>Travel Subclass</u>: The GDIT employees who worked on its OPM contract as Background Investigator, Project/Task Supervisor or similarly situated positions and were terminated between July and December 2019 and have not filed a timely request to opt-out of the class.

Plaintiffs maintain that the proposed class should proceed as a single class given the class-wide application of Defendant's policies related to where work could be performed.

### B.   The Proposed Class is Ascertainable

A Rule 23 class is ascertainable when "[the] court can readily identify the class members in reference to objective criteria." *EQT*, 764 F.3d at 358.  Defendant has shown that it can readily identify the employees who were assigned to the OPM contract and were terminated during the relevant time frame.  (<u>Ex</u>. <u>22</u> at 2-10; <u>Ex</u>. <u>8</u> at 3-11.)

### C.   The Numerosity Requirement is Met

Numerosity is met when the putative class is "so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  WARN claims regularly meet numerosity because, "[b]y its terms, WARN is applicable only in the context of employer action which affects a large number of employees."  *Finnan v. L.F. Rothschild & Co.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989).  While "[n]o specified number is needed" to meet the numerosity requirement, *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir.1967) (eighteen individuals sufficient), "joinder is generally deemed…impracticable in classes with more than 40 members."   B. Rubenstein, Newberg on Class Actions § 3:11 (5th ed.2013) ("Newberg").  *See*

---

members of the existing class.  *Id*. at 409.  They are "an appropriate procedural innovation under Rule 23(d)" when "there is no actual conflict among class members[.]." *Id*. at 408-09. When "the subclassification [is] appropriate under Rule 23(d), it is created without formally designating it as a Rule 23 subclass." *Id*. at 409. It is therefore unnecessary to evaluate it separately under Rule 23[(a)] for commonality, numerosity, typicality, and adequacy of representation."  *Id*.  A formal subclass certification is only necessary when there are conflicts among the class members, of which there are none here.  (<u>Ex</u>. <u>32</u>, ¶12; <u>Ex</u>. <u>33</u>, ¶12; <u>Ex</u>. <u>34</u>, ¶12; <u>Ex</u>. <u>35</u>, ¶12.)

*also Peoples v. Wendover Funding*, 179 F.R.D. 492, 497 (D.Md.1998) ("courts find classes of at least 40 members sufficiently large to satisfy the impracticability requirement.").  Courts also consider the "geographic dispersion" of class members, which would pose an obstacle to joinder of their claims.  *Adams v. Henderson*, 197 F.R.D. 162, 170 (D. Md. 2000).

Here, the proposed class is estimated to be approximately 800 to 1,200 individuals, (Sec. Am. Compl., ECF 39 at 1.)  Defendant ██████████████████████████████████

████████  (Ex. 8 at 3-11.)  They are sufficiently numerous, and impracticable to join, to warrant class certification.  *See New Orleans Clerks & Checkers Union Loc. No. 1497 v. Ryan-Walsh*, No. CIV.A. 93-3592, 1994 WL 72101, at *2 (E.D. La. Mar. 2, 1994) (WARN class of 140 members certified); *In re Mounce*, 390 B.R. 233, 241-42 (Bankr. W.D. Tex. 2008) (joinder would be "difficult, if not impossible" where class estimated to contain between 91 and 400 members spread throughout four judicial districts in Texas).

### D.  The Commonality Requirement is Met

Rule 23(a)'s second requirement is that "there be questions of law or fact common to the class" FED. R. CIV. P. 23(a)(2).  Common issues are those which can "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011) (citation and quotation omitted).  "This does not mean, of course, that the entire case must be decided by a single issue." *Souter*,  307 F.R.D. at 200.  Rather, "[a] single common question will suffice [if]…its determination 'will resolve *an issue* that is central to the validity of each one of the claims in one stroke.'" *EQT*, 764 F.3d at 360 (citing *Wal-Mart*, 564 U.S. at 350) (emphasis added).  The nature of the relevant evidence is paramount.  "[A] common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 453

19

(2016) (citing Newberg, § 4:50, pp. 196–197). "[I]f common evidence will generate a common answer to help resolve an element within the class' common claim, then *Wal–Mart*'s "one stroke" demand is satisfied." *Soutter*, 307 F.R.D. at 200. *See id.* at 201 (commonality established where inaccuracy of consumer reports provable through common database).

Here, the driving factual and legal questions stem from a common core of facts regarding Defendant's actions and are provable through common evidence, any one of which will have a significant impact on every class member's rights. They include the following:

a) *Whether Defendant employed more than 100 employees*. This fact issue can be (and seemingly, already has been) proven through employee lists. (Ex. 8 at 3-11; Ex. 22 at 2-10.)

b) *Whether Defendant discharged the employees beginning on April 9, 2021, in connection with mass layoffs or plant closings or as the reasonably foreseeable result thereof*. This fact/legal issue can be proven through the Workday data and Justification forms. (Ex. 8; Ex. 31.)

c) *Whether Defendant terminated the employment of the class members without cause*. This factual question can be proven through Defendant's termination records, including its RIF Justification forms (*e.g.*, Ex. 31) and likely in its HR database.

d) *Whether the class members' single site of employment was the Falls Church office*. As discussed fully *infra* (Arg. Sec. IV.A.), this issue will turn on common evidence of job duties (*supra* Facts Sec. C), uniform policies regarding where employees worked (*supra* Facts Sec. E.1.), common evidence of work outside the home (*supra* Facts Sec. E.2), and common evidence of management's involvement in assigning and monitoring daily work (*supra* Facts. Sec. D).

e) *Whether Defendant terminated the class members without giving them at least 60 days' prior written notice as required by the WARN Act*. Defendant purports that this information is contained in its database, as evidenced by the list produced in discovery. (Ex. 8 at 3-11.)

f)   *Whether Defendant has any valid defenses justifying less than 60 days' notice.*  This factual/legal issue focuses on Defendant's knowledge of the circumstances surrounding the discontinuation of the OPM contract.[33]

g)   *Whether Defendant failed to pay the class members 60 days' wages and benefits*.  This factual question can be proven through Defendant's payroll records.

These issues satisfy Rule 23(a)'s requirement of a single common question of law or fact.

### E.  The Typicality Requirement is Met

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156 (internal quotation marks omitted).  It is not necessary that the claims "be perfectly identical or perfectly aligned," but that the prosecution of the plaintiffs' cases "tend[s] to advance the interest of the absent class members." *Deiter v. Microsoft Corp*., 436 F.3d 461, 466 (4th Cir. 2006).  Typicality is satisfied when the claims arise from the same course of events, and each class member makes similar legal arguments to prove liability.  *J.D. v. Nagin*, 255 F.R.D. 406, 415 (E.D. La. 2009).  As with the class certification inquiry generally, the merits of the respective claims are not at issue: typicality focuses less on the relative strength of the named and unnamed Plaintiffs' cases than on the similarity of the legal and remedial theories behind [their] claims." *Id*. (citing *Jenkins v. Raymark Industries,* 782 F.2d 468 (5th Cir. 1986)).

Here, Plaintiffs allege the same injury as the proposed class members: they were all terminated by the Defendant as part of the same plant closing or mass layoff.  Plaintiffs' interests

---

[33] *See Soutter*, 307 F.R.D. at 207 n.13 (question of defendant's statutory willfulness is classwide issue even if it does not dispose of class' claims).

in proving their claims are identical: they all seek to show that GDIT was a covered WARN employer; conducted a plant closing or mass layoff beginning on or around July 3, 2019; did not provide any of the employees with 60 days' notice of their terminations; and did not have any valid defense justifying that failure.  Plaintiffs seek to show that they had no fixed workplace within GDIT's regular sites and that they reported to the PMO in Falls Church.   Like some of the proposed class, Plaintiffs Merino, Beecroft and Thamvanthongkham seek to show that their job duties required significant travel.  Plaintiffs' interests do not diverge from those of the proposed class on these issues. They are all susceptible to proof through the common bodies of evidence listed *supra* with respect to commonality and *infra* with respect to predominance.

### F.  The Adequacy of Representation Requirement is Met

Rule 23(a)'s final requirement is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).  Plaintiffs must also show that "class counsel [will] fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(4).

Adequacy of the named Plaintiffs focuses first on any potential conflicts of interest with the proposed class.  "For a conflict of interest to defeat [adequacy,] 'that conflict must be fundamental…not speculative or hypothetical.'"  *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir.2010) (quoting *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 430 (4th Cir.2003)). Here, there are no conflicts: Plaintiffs and the proposed class members must prove that they were entitled to, and not given adequate WARN notice.  Plaintiffs are well-suited to represent the class because they have been diligent in prosecuting the case.  (*Supra* Facts Sec. F.)

Plaintiffs' counsel are adequate because they are "qualified, experienced and generally able to conduct the proposed litigation."  *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968), *cert. denied*, 417 U.S. 156 (1974). *See also Rangel v. Cardell Cabinetry*, No. SA-13-

CA-843, 2014 WL 12542900, at *3 (W.D. Tex. Jan. 22, 2014) (appointing firms with WARN and class action experience).  As set forth in the Roupinian Declaration, attached as Ex. 36, proposed class counsel are particularly qualified to represent the putative class in this WARN action and have diligently prosecuted Plaintiffs' claims.  Raisner Roupinian LLP is dedicated solely to representing employees affected by mass layoffs and shutdowns.  Before commencing this action, counsel investigated the facts giving rise to the claims.  After filing suit, counsel have continued to investigate and defeated a motion to dismiss the Second Amended Complaint. They are well versed in the relevant facts and have ample experience with the applicable law.

For the foregoing reasons, Rule 23(a)'s requirements are met by the proposed class.

## IV. THE PROPOSED CLASS MEETS THE REQUIREMENTS OF RULE 23(b)(3)

Class certification is proper under Rule 23(b)(3) when the moving party shows: (1) that common questions of law or fact predominate over individual questions (predominance); and (2) that a class action is the superior method to adjudicate the dispute (superiority).  "If a lawsuit meets these requirements, [class] certification…promot[es] judicial economy…[and] afford[s] aggrieved persons a remedy if it is not economically feasible to obtain relief through…multiple individual damage actions." *Gunnells*, 348 F.3d at 424 (citation and quotation omitted).

### A.  Common Issues will Predominate the Litigation

Where common questions "predominate over any questions affecting only individual members," the first prong of Rule 23(b)(3) is met. *Amchem Prod. v. Windsor*, 521 U.S. 591, 615 (1997).  Predominance does not require that *all* issues be common among the class.  "Indeed, common issues of liability may still predominate even when some individualized inquiry is required," *Ealy v. Pinkerton Gov't Servs.,* 514 F. App'x 299, 305 (4th Cir. 2013), such as damages. *See Stillmock v. Weis Markets*, 385 F. App'x 267, 273 (4th Cir. 2010).  As with

23

commonality, the existence of "common evidence" to determine issues weighs in favor of predominance. *See Soutter*, 307 F.R.D. at 214-215 (inaccuracy of consumer reports is common, predominant issue where it can be demonstrated through data in common database).  As described *supra* regarding commonality, the primary elements of a WARN claim are common among the proposed class and susceptible to class-wide proof.  Courts routinely find that these issues predominate WARN litigation.  *See, e.g.*, *Gomez v. Am. Garment Finishers Corp.*, 200 F.R.D. 579, 584 (W.D. Tex. 2000) ("[E]stablishing WARN liability turns on straightforward issues[.]"); *Rangel,* 2014 WL 12542900 at *3 (predominance "easily satisfied.")

The question whether the employees' "single site of employment" was the Falls Church office presents common questions for which common evidence will provide common answers.

Two provisions of Department of Labor's "single site of employment" regulation are relevant here. First, Subpart 6 states: "For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes."  20 C.F.R. § 639.3(i)(6).  Second, Subpart 8 states: "The term "single site of employment" may also apply to truly unusual organizational situations where the above criteria do not reasonably apply. The application of this definition with the intent to evade the purpose of the Act to provide notice is not acceptable." *Id.* § 639.3(i)(8).

1. Subpart 6

Whether Subpart 6 applies to Plaintiffs and the proposed class is governed by the Fourth Circuit's decision in *Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803 (4th Cir. 2007).  *Meson*

addressed the single site of employment for a regional sales manager who managed two employees at "her small [GATX] office in Falls Church" and whose "duties involved significant travel." *Id.* at 804. The court held that Subpart 6 applies only to "truly mobile workers, without a regular, fixed place of work." *Id.* at 809. Because the company office was the plaintiff's "undisputed fixed place of work," *id.* at 810, it was her WARN single site.

The proposed class members were a "mobile workforce", ███████████████

███████████████  (Ex. 6 at 31.) None had a "fixed place of work" as defined in *Meson* as a business office of the company - that is, one "of the employer's regular employment sites." 20 C.F.R. § 639.3(i)(6). (*See* Shartle 30b6 Dep., 104:15-105:13; Ex. 25 at 3 (████████████

███████████████).) The court's emphasis on the presence or absence of a "fixed place of work" was informed by DOL's examples of employees for whom Subpart 6 was intended: bus driver and railroad workers, who have "no fixed workplace or office," and "traveling salespersons, who work primarily out of their homes or cars, rather than those who work out of fixed offices." 507 F.3d at 809. The *Meson* Court reasoned that the plaintiff "work[ed] out of a particular office," not unlike "most other branch managers." *Id*. at 810. Applying Subpart 6 to the plaintiff would mean "every such regional manager or chief executive could claim the corporate headquarters—in lieu of the office she manages—as her single site of employment." *Id*. (citations and quotations omitted). The question here, simply put, is whether Plaintiffs and the proposed class are more like regional sales managers who manage employees in a company office, or traveling salespeople who work out of their homes or cars. Under the terms of Subpart 6, the analysis focuses on whether their "primary duties require travel from point to point" or "involve work outside any of the employer's regular employment sites." 20 C.F.R. § 639.3(i)(6). That question will be based on common bodies of evidence.

The job duties of the class members (uniform across each role) are contained in two documents.  (*Supra* Facts Sec. C.)  Common evidence will show that the primary duties of all proposed class members "involve[d] work outside any of the employer's regular employment sites," 20 C.F.R. § 639.3(i)(6), and that their homes were not a "fixed office" under *Meson*. These inquiries focus on the status of employee homes in GDIT's organization and the employees' ability to work outside of the home.  The relevant policies—GDIT's "Flexible Work Location" policy (which ███████████████████████████████████████████),  additional policies with which "home-based workers" were required to comply, and the PII Policy—applied to the proposed class members equally.  (*Supra* Facts Sec. E.1.)  The interpretation of these policies, and their implications for the "fixed" nature of the work, will be uniform across the class.  Plaintiffs claim that ████████████████████████████ ██████████████████████████████████████████████████ ████████████████ GDIT's decision ██████████████████████████ ███████████████ is itself common evidence.  (*Supra* Facts Sec. E.)  Even so, ███████████ ████████████████████████████████████████████████.

Adding a second basis for applying Subpart 6, the primary duties of the Investigators (including Mentors) and Field Supervisors required traveling from "point to point", 20 C.F.R. § 639.3(i)(6), including for interviews, record reviews and (for the Mentors and Field Supervisors) check rides.  (*Supra* Facts Secs. C.1-3.)  This work formed the foundation of GDIT's contract with OPM: ████████████████████████████████████████ ██. (*See* <u>Ex. 6</u> at 8 ██████████████████████████████████████ ███████████) and 57 (███████████████████████████████████████).  The primacy of mobility is evidenced in the fact that these employees were ██████████████████



(*See* Shartle 30b6 Dep., 182:5-12. 185:19-186:1; Merino Dep., 94:2-6 (Investigators); Beecroft Dep., 77:22-78:19, 79:6-11, 97:5-98:7; Merino Dep., 109:23-110:25; 200:15-201:4 (Mentors); Thamvanthongkham Dep. at 59:19-23 (Field Supervisors).)  Performance evaluations

(*Supra* Facts Sec. C.)  That these primary job duties required travel is also provable through common bodies of evidence that they did, in fact, travel substantially.  At least six bodies of common evidence will show how regularly these employees traveled, including

. (*Supra* Facts. Sec. E.2.)[34]

Under Subpart 6, the employees will rely on common evidence to prove reported to and received assignments from the Falls Church office.

. (*Supra* Facts Sec. B n.3.)  More importantly, evidence of the PMO's management activities will show whether the employees "reported to" or "received assignments" from Falls Church.  The record indicates that

(*Supra* Facts Secs. C., D.)  Proof of these facts will be common to all employees.

2.  <u>Subpart 8</u>

If Subpart 6 does not apply, the employees' single site will depend on whether GDIT's mobile workforce was a "truly unusual organizational situation."  20 C.F.R. § 639.3(i)(8).  That determination, focusing on organizational structure, will be class-wide.

---

[34] Even if there is variance in travel amongst employees, that would not defeat predominance. *See Soutter*, 307 F.R.D. at 214 (individualized inquiries are "qualitatively insignificant" where determinable through "computer records" or "objective criteria").

Regardless which regulatory subpart determines the employees' single site, the legal issues will have class-wide application and the factual issues will be determined through common evidence.  No individual issues will predominate this litigation.

**B.  Class Treatment is the Superior Method of Adjudicating the Employees' Claims**

Rule 23(b)(3) sets forth four factors to guide the court's determination as to whether a class action is superior to individually filed lawsuits:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

First, the size of the employees' respective claims makes individual suits not only inferior, but unfeasible.  "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."  *Amchem*, 521 U.S. at 617 (citation omitted). Limited damages make individual WARN claims non-economical and virtually unheard of.  *See Rangel*, 2014 WL 12542900, at *3 ("WARN Act cases are often described as "negative value" suits"); *In re TWL Corp.*, 712 F.3d 886, 903 (5th Cir. 2013) (Graves, concurring) ("[T]he greatest indication that a class action…would be superior…is a negative value suit.") (quotations omitted).  Plaintiffs each have a claim of less than $10,000, not including benefits.  Given their financial situation and the cost of attorneys' fees, they are unable to pursue these claims as sole litigants. They believe that class members are similarly situated.  (*Supra* Facts Sec. F.)  A class proceeding is likely the only way the employees can vindicate their federal employment rights.

Second, no litigation has been commenced by any members of the proposed class concerning the layoffs at issue here.  Personal interest in controlling the litigation is minimal. *See Messer*, 2019 WL 2550328, at *5 (finding little individual interest in control of WARN claims given relatively "small and uniform" damages); *White v. Imperial Adjustment Corp.*, No. 99–CV–3804, 2002 WL 1809084, at *14 (E.D.La. Aug. 6, 2002) *aff'd in part, appeal dismissed in part and remanded*, 75 Fed.Appx. 972 (5th Cir.2003) (where "the focus of the proceeding will be the alleged course of conduct of the defendants in conscious disregard of the [plaintiffs'] rights…the interest in personally controlling the litigation is small.")

Third, concentrating the litigation will "promote[] consistency of results, giving [D]efendant[] the benefit of finality and repose."  *Gunnells*, 348 F.3d at 427.

Finally, no significant difficulties are likely in managing this case as a class action.  The Court has ample discretion to fashion the class and manage the case in the way best suited to achieve economy of judicial and party resources.

Both prongs of Rule 23(b)(3) are satisfied here, and the class should be certified.

## V.  THE COURT SHOULD APPOINT PLAINTIFFS AS CLASS REPRESENTATIVES

Plaintiffs have been diligent in pursuing the claims.  (*Supra* Facts Sec. F.)  They have no conflicts of interest with other Class Members, and have and will fairly and adequately represent the interests of the Class.  (Ex. 32, ¶¶ 10, 12; Ex. 33, ¶¶ 10, 12; Ex. 34, ¶¶ 10, 12; Ex. 35, ¶¶ 10, 12.)  For these reasons, Plaintiffs should be appointed Class Representatives.

## VI. THE FORM AND MANNER OF SERVICE OF NOTICE ARE PROPER

Plaintiffs further submit that service of the proposed <u>Notice of Class Action</u>, attached as <u>Ex. 37</u>, by First Class Mail, postage prepaid, to each member of the class at the member's last known address as shown in the Defendant's records is the best notice practicable.  Fed. R. Civ. P. 23(c)(2)(B) mandates that for any class certified under Rule 23(b)(3), the Court must determine

29

the best notice practicable under the circumstances, including individual notice to potential class members, and that the notice must concisely and clearly state in plain, easily understood language:

- the nature of the action,
- the definition of the class certified,
- the class claims, issues or defenses,
- that a class member may enter an appearance through counsel if the member so desired,
- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
- the binding effect of a class judgment on class members under Rule 23(c)(3).

While no rigid standards govern, notice must contain information that a reasonable person would consider material to making an informed decision whether to opt-out or remain in the class and be bound by a judgment. *In re Domestic Air Transp. Antitrust Litigation*, 141 F.R.D. 534, 553 (N.D. Ga. 1992). Individual mailings to class members is appropriate. *In re Electronic Data Systems,* 226 F.R.D. 559, 572 (E.D. Tex. 2005). Here, the proposed Notice plainly summarizes the nature of the litigation and apprises the proposed class of, *inter alia*, the class definition; the claims, issues and defenses; that complete information is available from class counsel; that any class member may opt-out of the class; and that if they do not opt-out, they will be bound by a judgment or settlement but may still appear by their own counsel. The names and addresses of the putative class members are contained in Defendant's records. Once Plaintiffs have been provided with those names and addresses, counsel will mail the Notice by First Class Mail, postage prepaid, so that the class member will have at least 30 days to object to Class certification and opt out. This is the best practicable notice under the circumstances.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Class Certification and Related Relief should be granted.

### ***[Signature on following page]***

30

Dated: November 5, 2021                Respectfully submitted,


                                       */s/ Edward E. Bagnell, Jr.*
                                       Edward E. Bagnell, Jr., Esquire (VSB #74647)
                                       Jennifer J. West, Esquire (VSB #47522)
                                       **Spotts Fain PC**
                                       411 East Franklin Street, Suite 600
                                       Richmond, Virginia 23219
                                       Telephone: (804) 697-2000
                                       Facsimile: (804) 697-2100
                                       Email: jwest@spottsfain.com
                                       Email: ebagnell@spottsfain.com

                                       Jack A. Raisner
                                       René S. Roupinian
                                       **Raisner Roupinian LLP**
                                       270 Madison Avenue, Ste. 1801
                                       New York, New York 10116
                                       Telephone: (212) 221-1747
                                       E-mail: jar@ raisnerroupinian.com
                                       rsr@ raisnerroupinian.com


                                       *Attorneys for Plaintiffs and the putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of November, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record as follows:

Neil H. MacBride, Esq.
DAVIS POLK & WARDWELL LLP
901 15th Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone: (202) 962-7000
E-mail: neil.macbride@davispolk.com

Paul S. Mishkin, Esq.
Craig J. Bergman, Esq.
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
E-mail: paul.mishkin@davispolk.com
E-mail: craig.bergman@davispolk.com
*Attorneys for Defendant General Dynamics
Information Technology, Inc.*

/s/ *Edward E. Bagnell, Jr.*
Edward E. Bagnell, Jr. (VSB #74647)
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone: (804) 697-2000
Facsimile: (804) 697-2100
Email: ebagnell@spottsfain.com
*Attorneys for Plaintiffs and the putative class*